[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
SEPTEMBER 7, 2005
THOMAS K. KAHN
CLERK

_____

No. 05-11466
Non-Argument Calendar

_____

D. C. Docket No. 03-00069-MC-HGD-S

JOHN SEAMAN,

Plaintiff-Appellant,

versus

JEFFERSON COUNTY PERSONNEL BOARD, THE,

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Northern District of Alabama

_____

**(September 7, 2005)**

Before BLACK, CARNES and PRYOR, Circuit Judges.

PER CURIAM:

John Seaman appeals the district court's order upholding the decision of the

court-appointed receiver for his employer, the Jefferson County, Alabama Personnel Board, to terminate his employment. We affirm.

## I.

In 1981, the United States government, private civil rights plaintiffs, and the Jefferson County Personnel Board entered into a consent decree mandating that the Board not discriminate in the hiring of municipal workers. The decree provided that a Birmingham-based federal district court would oversee the Board's efforts to comply with the consent decree. We have previously recounted many of the facts and the first twenty years of the procedural history of the case in Ensley Branch, N.A.A.C.P. v. Seibels, 31 F.3d 1548 (11th Cir. 1994). A detailed updating of the procedural history is not necessary here.

What is important for our present purposes is that in 2002 the district court, which was charged with the responsibility of seeing that the directives in our Ensley Branch decision were carried out, understandably became impatient with the snail's pace at which the Personnel Board was revamping its hiring practices to meet the requirements of the consent decree. The court held the Board members in contempt and appointed a receiver to run the Board's day-to-day operations. One of the main reasons for the contempt citation was the Board's failure to obtain and put into place non-discriminatory, job-related employee selection procedures.

The receiver, from the day he was appointed, focused on the process for creating employee selection procedures, which was the responsibility of the Personnel Board's research and validation division. Seaman had been manager of the research and validation division for the previous decade. Soon after the receiver was appointed, he instructed Seaman that his division must: develop a manual describing the proper creation of non-discriminatory employee selection procedures; conduct a self-assessment of the division; and begin forecasting for likely vacancies so the division could stay ahead of its work. The receiver also cautioned Seaman that all of the division's assignments should be distributed equally among the staff and reviewed by Seaman once completed.

Despite these warnings, Seaman dragged his feet for three months. Two outside consultants hired by the receiver concluded that the research and validation division had not made progress in adopting non-discriminatory employee selection procedures. The receiver, exasperated by this continued delay, fired Seaman. The receiver wrote Seaman that the cause for his termination was:

> 1) You failed to plan, develop, and implement a strategy to produce valid selection (examination) devices in a timely manner and professionally sound manner. In addition, several registers remained assigned but not completed over two years.
>
> 2) You did not distribute work assignments among your staff reasonably and fairly which caused morale problems within the Research and Validation Division.

3

3) You failed to establish an effective method for tracking and evaluation the work product of your staff.  In addition, you failed to forecast for creation of new registers [i.e., job descriptions] and to take proactive measures to meet demand when it accrued.

4) You failed to take corrective measures when it was brought to your attention that one of your staff members, for months, had failed to score all applications even though the registers had been established.  When you were told to inform the Receiver of the problem, you refused to do so.

(R.1:6:18.)

Seaman appealed the receiver's decision to fire him.  Normally, under state law, a municipal employee for Jefferson County can appeal his termination to the Personnel Board.  The Board typically refers the matter to a hearing officer, who conducts a public hearing, takes testimony, and submits a recommendation to the Board.  The Board then reviews the hearing officer's recommendation de novo and modifies, alters, sets aside, or affirms it as the Board deems appropriate.  See 1945 Ala. Laws 248 § 22.

This was not the process that applied to Seaman's appeal.  The district court, in its 2002 order holding the Personnel Board in contempt, modified the procedure for employees of the Board itself who were appealing a termination decision.  Under the court's order the Board was divested of its jurisdiction to hear appeals of its own employees from adverse employment actions.  More particularly, the order specified:

4

for the duration of the Receivership . . . (i) any employee of the Jefferson County Personnel Board holding permanent status, and who is subject to demotion, suspension, discipline, or termination at the instance of the Receiver, shall be entitled to a due process hearing before a magistrate judge of [the Northern District of Alabama] randomly drawn, who shall apply the same standards of review as would otherwise be applied by the Personnel Board in such matters, but for the existence of this court's order. . . . Upon completion of the hearing, the magistrate judge shall file his written findings and conclusions of law, together with a recommendation for disposition of the appeal. Either party may file objections to the magistrate judge's finding and conclusions within ten (10) calendar days after they are entered, and [the district court] shall thereafter enter such orders as may be appropriate.

(R.1.22:3–4.)

In compliance with the district court's 2002 order, Seaman appealed the receiver's decision to terminate him to a randomly selected magistrate judge of the Northern District of Alabama. The magistrate judge held a three day hearing on Seaman's appeal and issued a 105-page report recommending that the receiver's termination decision be reversed and that Seaman be reinstated.

The receiver timely objected to the magistrate judge's report and recommendation. The district court, considering these objections, reviewed de novo all of the evidence introduced at the hearing and rejected the magistrate judge's report and recommendation. The court issued its own eighty-four-page order affirming the receiver's decision to terminate Seaman.

Seaman now appeals the district court's order upholding the decision of the receiver to fire him. He contends that the district court made three errors.

5

**II.**

Seaman's first contention is that the district court was without jurisdiction to review the magistrate judge's recommendation to reverse the receiver's termination decision. He argues that, because the magistrate judge was reviewing the termination decision as the Personnel Board would have, any appeal from the magistrate's recommendation must be to a three-judge panel of the state circuit court, which is the only body authorized by Alabama law to hear appeals from the Personnel Board. In other words, Seaman asserts that a state trial judge has the exclusive jurisdiction to review the decision of a federal magistrate judge.

This contention is specious. In the 1981 consent decree the district court reserved jurisdiction to ensure that the Board was complying with all the provisions of the decree. As part of this oversight, the district court in 2002 held the Personnel Board in contempt for failing to meet its obligations under the consent decree. One of the reasons the court gave for holding the Board in contempt was the Board's failure to fire employees who continued writing employee selection criteria that did not alleviate racial discrimination. As part of the remedy for this problem, the district court divested the Board of its jurisdiction to hear appeals from terminated Board employees and put in place the procedure specified in the part of the 2002 order we have quoted.

6

The district court had jurisdiction under its 2002 order, which was entered as a result of the 1981 consent decree and never appealed, to put in place a procedure appropriate to achieving the goals of the 1981 decree and the directives set out in our Ensley Branch decision. Seaman does not challenge the district court's authority to put into place an alternative procedure in which appeals from adverse employment actions would be to the magistrate judge instead of the Personnel Board. Instead, he challenges the provision in the 2002 order that appeals from the magistrate judge go to the district court instead of to a three-judge state court panel, the procedure that Alabama law provides in other cases. If the district court had the authority to order that appeals be to the magistrate judge in the first place—and Seaman concedes that it did—the court also had the authority to order that appeals from the magistrate judge go to the district court. That is particularly obvious in light of the fact that any appeal from a magistrate judge always is to the district court, not to some other agency, panel, or court.[1]

## III.

Seaman's second contention is that, even if the district court had jurisdiction

---

[1] Seaman asserts, almost as an aside in his initial brief, that depriving him of an opportunity to appeal his termination to a three-judge state circuit court panel violates the Due Process Clause. He is wrong. Procedural due process requires that one whose property rights have been deprived by an entity of the government be afforded an opportunity to be heard, notice, and an unbiased decision maker. See Grayden v. Rhodes, 345 F.3d 1225, 1232 (11th Cir. 2003). Seaman was afforded all of that.

to review the magistrate judge's recommendation, the district court can only review it under the highly deferential substantial evidence standard instead of de novo which is the review standard the court actually applied. According to Seaman, because the district court's 2002 order requires that the magistrate judge "apply the same standards of review as would otherwise [under Alabama law] be applied by the Personnel Board," any further appeal from the magistrate judge's decision must also adhere to the standard of review dictated by Alabama law. Seaman points out that in the employee termination context, an adverse decision of the Personnel Board is appealed to a three-judge circuit court panel and reviewed by it for substantial evidence. See 1945 Ala. Laws 248 § 22. This is essentially an argument about the interpretation of the court's 2002 order.

The district court rejected Seaman's interpretation of its 2002 order and so do we. While Seaman is correct that the 2002 order required the magistrate judge to apply the same standard of review as the Personnel Board, the order had no corresponding provision that the district court would apply the same standard of review as the three-judge circuit court panel. The 2002 order only stated that "this court shall thereafter enter such orders as may be appropriate." (R.1:22:4.) That language, the district court explained in this case, did not limit its review of the magistrate judge's order to the substantial evidence test; instead, the matter was

8

governed by the law contained in 28 U.S.C. § 636(b)(1)(B), which provides for the district court to conduct <u>de novo</u> review of a magistrate judge's recommendation.

We accord the district court substantial deference in its interpretation and construction of its own orders. <u>Commercial Union Ins. Co. v. Sepco Corp.</u>, 918 F.2d 920, 924 (11th Cir. 1990). As long as the court's interpretation of a prior order is reasonable, we will affirm it. <u>See</u> <u>id.</u>

Here the district court's interpretation is reasonable. The language of the order itself does not preclude application of the usual standard specified in 28 U.S.C. § 636(b)(1)(B), the federal statute governing the review of magistrate judge reports and recommendations. That section states that: "Within ten days after being served with a copy, any party may serve and file written objections to [the magistrate judge's] proposed findings and recommendations as provided by rules of court. . . . A [district] judge of the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." <u>Id.</u> Similarly, the 2002 order states, "Either party may file objections to the magistrate judge's finding and conclusions within ten (10) calendar days after they are entered, and this court shall thereafter enter such orders as may be appropriate." (R.1:22:4.) The materially identical language suggests a materially identical standard of review, and there is nothing in the 2002 order to suggest the contrary.

Accordingly, we defer to the district court's interpretation of its 2002 order and conclude that it did not err in reviewing <u>de novo</u> the magistrate judge's report and recommendation.

**IV.**

Seaman's final contention is that, if the district court applied the substantial evidence test as it should have, the court could not have rejected the magistrate judge's recommendation that Seaman be reinstated. Given our holding above that the district court was correct to review <u>de novo</u> the magistrate judge's recommendation, this contention is moot.

The district court's findings of fact, which Seaman does not contend are clearly erroneous, support the receiver's determination that Seaman had failed to develop a strategy for creating non-discriminatory employee selection criteria, had failed to properly utilized his staff, and had failed to prevent his staff from producing shoddy work without proper supervision. Given those findings of fact, the court's decision to uphold the receiver's decision to fire Seaman is due to be affirmed.

**AFFIRMED.**